## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LINDA HARRIS,

               *Plaintiff,*

vs.

                                          Case No. 08-2386-EFM

ROGER HOOD, M.D. et al.,

               *Defendants.*

### MEMORANDUM AND ORDER

Presently before the Court is Defendant Midwest Division-OPRMC, LLC d/b/a Overland Park Regional Medical Center's ("OPRMC") Second Motion for Summary Judgment (Doc. 32), which addresses only those claims asserted by Plaintiff Linda Harris ("Harris") against OPRMC. For the following reasons, the Court grants the motion.

### I.  Factual and Procedural Background

According to the allegations in Plaintiff's Complaint, Harris was admitted to the OPRMC on August 23, 2006, for a left total knee arthroplasty, commonly referred to as a knee replacement. Harris was admitted to OPRMC under the care of Defendant Dr. Roger Hood after he recommended the surgery based on Harris' previous examinations.  Dr. Hood performed surgery on Harris' knee that same day.  After discharge from OPRMC, it was determined that Harris' left knee was not properly aligned and the components were loose.  Subsequently, she underwent a revision of the knee replacement by an alternate physician.

-1-

At the time Dr. Harris performed the surgery, he was licensed to practice medicine in the State of Kansas, and qualified for and had coverage under the Kansas Health Care Stabilization Fund ("Fund").  However, nearly 2 years after the surgery, on June 26, 2008, Dr. Hood surrendered his license to practice medicine.

Harris filed the instant action on August 20, 2008, claiming that Dr. Hood was negligent in: (a) performing the August 23, 2006 surgery;[1] (b) failing to cease the practice of medicine due to his compromised ability to practice with skill and safety; and (c) failing to inform Harris of that compromised ability to practice with skill and safety.  Harris further claimed OPRMC was negligent in: (a) failing to investigate Dr. Hood's fitness to practice medicine and surgery; (b) providing Dr. Hood with credentials to practice medicine and surgery; and (c) failing to inform Harris of Dr. Hood's compromised ability to practice medicine and surgery.

On September 25, 2008, OPRMC filed a Motion for Summary Judgment, claiming that OPRMC was immune from all of Harris' claims due to the operation of K.S.A. § 40-3403(h) and K.S.A. § 65-442(b).  On October 26, 2008, United States Magistrate Judge James O'Hara denied OPRMC's motion without prejudice as a result of permitting Harris to amend her Complaint to clarify her allegations against OPRMC.  Harris filed an Amended Complaint on October 27, 2008, which included additional claims that OPRMC was negligent in:[2] (d) failing to supervise Dr. Hood to ensure that his practice did not constitute a danger to Harris while she was a patient of OPRMC; (e) failing to inform Harris of the dangers and risks of surgery that the employees of OPRMC were

---

[1]In her Complaint, Plaintiff specifically identified the acts arising to Dr. Hood's alleged negligence in performing the surgery, (Doc. 1, ¶ 21(a)-(c)), but because those specific claims do not impact the instant motion, we will not list them in detail.

[2]The Court continues with its sequence of claims to remain consistent with Plaintiff's letter designations in her amended complaint, and refers to each claim in this opinion by these subparagraph designations.

aware of by virtue of their superior learning, skill, expertise, and experience with the medical procedure and Dr. Hood; (f) failing to furnish Dr. Hood with information concerning his practice so he could have corrected his practice, chosen not to perform surgery, or informed Harris of the risks and dangers associated with the surgery with Dr. Hood as the surgeon; and (g) failing to institute a chain of command, seek outside remedies, or implement protective measures to protect Harris from having the surgery performed by Dr. Hood.[3]

Subsequent to Harris' filing of her Amended Complaint, OPRMC filed the instant Second Motion for Summary Judgment for all claims against OPRMC.

## II.  Summary Judgment Standard

The Court is familiar with the standards governing the consideration of Summary Judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[4]  An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[5]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim.[6]  In considering a motion for summary judgment, the Court must examine all of the evidence in a light most favorable to the nonmoving party.[7]

The moving party bears the initial burden of demonstrating an absence of a genuine issue of

---

[3]Doc. 24, ¶ 22.

[4]Fed. R. Civ. P. 56(c).

[5]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003).

[6]*Id.*

[7]*Harrison v. Wahatoyas, LLC*, 253 F.3d 552, 557 (10th Cir. 2001).

material fact and entitlement to summary judgment.[8]  The moving party is not required to disprove the nonmoving party's claim or defense, but must only establish that the factual allegations have no legal significance.[9]  If this initial burden is met, the nonmovant must then set forth specific facts showing that there is a genuine issue for trial.[10]  In doing so, the opposing party may not rely on mere allegations or denials in its pleadings, but must present significant admissible probative evidence supporting its allegations.[11]  The Court is also cognizant that it may not make credibility determinations or weigh the evidence when examining the underlying facts of the case.[12]

Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[13]

### III.  Discussion

OPRMC asserts that it is entitled to summary judgment because it is immune from Harris' claims by operation of K.S.A. § 40-3403(h) and K.S.A. § 65-442(b), and supported by the Kansas Supreme Court's holding in *McVay v. Rich*.[14]  OPRMC argues that Harris' alleged claims against

---

[8]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[9]*Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

[10]*Celotex*, 477 U.S. at 323.

[11]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

[12]*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

[13]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[14]255 Kan. 371, 874 P.2d 641 (1994).

it are based on the theory of corporate negligence,[15] with none of the claims alleging any direct negligence against OPRMC.  Instead, Harris' claims simply attempt to make the hospital legally responsible for Dr. Hood's alleged negligence.  OPRMC further contends that even after Harris was permitted to amend her Complaint, she has failed to allege any claims against OPRMC that fall outside the liability protection provided by Kansas Law.

Harris responds by first agreeing with OPRMC that corporate negligent claims against a hospital are proper for summary judgment, and as a result, her corporate negligence claims in subparagraphs (a) and (b) are subject to summary judgment.  Harris, however, disagrees that summary judgment is warranted against her remaining allegations.  Harris argues that allegations (c) through (g) do not wait for, or depend upon, the negligence of Dr. Hood to impute liability on OPRMC.  Rather, these claims are specific to a duty owed by OPRMC's employees specifically to Harris.  Harris argues these claims are "links in the chain of causation that includes the physician's conduct," but are not dependant on the physician for causation.[16]

The Court agrees with the parties that Harris' claims in subparagraphs (a) and (b) relate to OPRMC's corporate negligence, and therefore, we grant OPRMC's motion with regard to these claims.  We now turn to the parties' arguments regarding the remaining claims against OPRMC.

In arguing for summary judgment, OPRMC argues that Harris' remaining allegations, although phrased to indicate direct negligence, amount to nothing more than claims of negligent

---

[15]With respect to hospitals, "corporate negligence . . . stands for the proposition that hospitals have an independent duty to ensure the health and safety of their patients." *McVay*, 255 Kan. at 375, 874 P.2d at 644.  These duties include "the duty to exercise reasonable care in the procurement and maintenance of equipment, the duty to exercise reasonable care in granting, renewing, and extending staff privileges, [and] the duty to monitor and review patients' treatment and progress." *Id.*

[16]Doc. 37, p. 4.

credentialing or corporate negligence.  In support of its arguments, OPRMC relies on the protections

provided by Kansas law under the Fund, which provides in part:

> A health care provider who is qualified for coverage under the fund shall have no vicarious liability or responsibility for any injury or death arising out of the rendering of or the failure to render professional services inside or outside this state by any other health care provider who is also qualified for coverage under the fund.[17]

In addition to the Fund, OPRMC relies on the Kansas medical facilities survey and construction act

to support its position.[18]  This act limits a hospitals liability for the negligence of another health care

provider that is licensed to practice medicine so long as that provider is not an employee or agent

of the hospital.[19]  Specifically, the act provides:

> There shall be no liability on the part of and no action for damages shall arise against any licensed medical care facility because of the rendering of or failure to render professional services within such medical care facility by a person licensed to practice medicine and surgery if such person is not an employee or agent of such medical care facility.[20]

OPRMC contends, and Harris does not dispute, that both OPRMC and Dr. Hood are both health care

providers and each were qualified for coverage under the Fund at the time the alleged injury arose.

OPRMC, therefore,  contends that a plain reading of the statutes indicates that Harris' claims against

it are barred.  Moreover, OPRMC asserts that Kansas Supreme Court decision in *McVay* not only

supports this conclusion, but mandates that summary judgment be granted in its favor on Harris'

---

[17]K.S.A. § 40-3403(h).  The Fund defines a "health care provider" as "a person licensed to practice any branch of the healing arts by the state board of healing arts ," and lists a number of exceptions which are inapplicable to the present case.  K.S.A. 40-3401(f).

[18]K.S.A. § 65-410 *et seq.*

[19]Harris controverts OPRMC's statement of fact, supported by affidavit, stating that Dr. Hood was not an employee or agent of the hospital based on Harris' contention that she has not had the opportunity to discover facts that bear upon the affidavit of Steven Anderson, Chief Executive Officer of OPRMC.  The Court finds OPRMC's affidavit by the CEO of the hospital (Doc. 33-3) sufficient in support of this fact.

[20]K.S.A. § 65-442(b).

remaining claims.

As with this action, *McVay* dealt with a plaintiff claiming medical negligence against a physician and the hospital for injuries sustained in an operation performed by the physician. McVay claimed that because of the physician's negligence in performing the surgery, she required additional surgeries, which caused pain and suffering along with additional current and future medical expenses. In addition, she alleged the hospital was negligent in not properly providing or performing a quality assurance program or taking action to suspend or revoke the physician's staff privileges. McVay claimed that the hospital was aware, or should have been aware, that other hospitals in the area had withdrawn the physician's staff privileges, and because it did not do the same, it was negligent. The physician that performed McVay's surgery failed to renew his license, and ultimately, the state licensing board revoked his license. However, the physician was licensed to practice medicine at the time he performed the surgery.

The Kansas Supreme Court framed the issue in *McVay* as whether, under the provisions of K.S.A. § 65-442(b) and K.S.A. § 40-3403(h), "a licensed hospital cannot be held liable for damages because of the rendering of or failure to render professional services within the hospital by a physician who is licensed to practice medicine and surgery and covered under the Health Care Stabilization Fund, if the physician is not an employee or agent of the hospital."[21] In reaching its decision, the court addressed the corporate negligence theory, but declined to reach the question of whether Kansas should adopt it because the "unambiguous language of K.S.A. § 65-442(b) and K.S.A. § 40-3403(h) requires the conclusion that those statutes bar [corporate negligence claims]

---

[21]*McVay*, 255 Kan. at 372, 874 P.2d at 642.

against the hospital."[22]  The court explained that McVay's claims were barred by K.S.A. § 65-442(b) "because her claim is 'because of' [the physician's] rendering or failure to render professional services."[23]  Importantly, the court noted that the plaintiff would have no claim had the physician not provided negligent treatment to the plaintiff, and therefore, her claim was "derivative of and dependent upon her claim against [the physician].[24]  The court similarly held that the plaintiff's claims were barred under K.S.A. § 40-3403(h) because the claims arose "out of [the physician's] rendering of or the failure to render professional services."[25]

Accordingly, OPRMC posits that, based on the clear language of these statutes and Kansas Supreme Court precedent, it is immune from any and all liability resulting from the surgery Dr. Hood performed on Harris on the date in question.

Harris counters by arguing that OPRMC unduly narrows the accusations against OPRMC while at the same time expanding the court's holding in *McVay*.  Harris asserts that *McVay*'s holding is limited to corporate negligence issues, and in this case, she is not simply alleging general corporate negligence claims against OPRMC.  Instead, Harris argues that she is alleging specific negligent acts of OPRMC's employees regarding causation that stand independent of Dr. Hood's negligence.

Harris tailored her arguments in response to OPRMC's motion according to her specific allegations, which this Court will follow for ease of addressing the parties' arguments.

*Subparagraphs (c) and (e)*

---

[22]*Id.* at 377, 874 P.2d at 645.

[23]*Id.*

[24]*Id.*

[25]*Id.*

Subparagraphs (c) and (e) of Harris' Amended Complaint allege that OPRMC carelessly and negligently failed to inform plaintiff of Dr. Hood's compromised ability to practice medicine and surgery, and failed to inform plaintiff of the dangers and risks of surgery that the employees of OPRMC were aware of by virtue of their superior learning, skill, expertise, and experience with the medical procedure and Dr. Hood, respectively.  Harris asserts that each allegation specifically relates to the direct negligence of OPRMC and its employees, are unrelated to corporate negligence, and are part of the causal chain.  In support, she cites *Culp v. Sifers.*[26]  Harris explains that the court in *Culp* did not permit an informed consent allegation because there were no allegations that the defendant's employees were health care providers and no fiduciary relationship could be inferred based upon superior learning, skill, or expertise.  Harris argues that contrary to *Culp*, she has alleged that OPRMC's employees did have superior learning, skill, and expertise to both the procedure Dr. Hood would perform and as to Dr. Hood himself, and therefore, a fiduciary relationship exists between OPRMC's employees and Harris, thereby making summary judgment to these claims inappropriate.

In response to subparagraphs (c) and (e), OPRMC argues that Harris misreads *Culp* as standing for the proposition that a fiduciary relationship automatically exists between a plaintiff and defendant if the defendant has superior learning, skill, or expertise.  OPRMC contends that *Culp* creates no new duty on a hospital, arguing that Kansas law is well settled on the doctrine of informed consent, which requires the physician, as opposed to hospital staff, to inform their patient of the nature of the procedure and the risks involved.  OPRMC further posits that it is not the dangers, or the informing of, the actual medical procedure that is at issue, but instead, is Dr. Hood's ability to

---

[26]550 F. Supp. 2d 1276 (D. Kan. 2008).

perform the procedure properly.  OPRMC argues that even if Dr. Hood's ability to practice medicine was compromised, OPRMC was precluded by Kansas' peer review statutes from disclosing that information to a patient, and therefore, OPRMC owed no duty to disclose such information to Harris.

We first turn to Harris' claim in subparagraph (c) that OPRMC failed to inform Harris of Dr. Hood's compromised ability to practice medicine and surgery.  Dr. Hood was a licensed physician in Kansas at the time he performed the surgery, and as OPRMC has indicated, any knowledge it or its employees might have had regarding any peer review regarding Dr. Hood's ability to practice would be privileged and not subject to disclosure by OPRMC's employees.[27]  In addition, this Court has not found, and Harris has not provided, any authority for imposing upon a hospital or its employees a duty to inform a patient of information relating to a licensed physician's ability to practice or perform any particular procedure that is obtained outside the peer review process.  Accordingly, we decline to impose such a duty in this case.

Harris' claim in subparagraph (e) fails for similar reasons.  Harris alleges that OPRMC failed to inform Harris of the dangers and risks of the surgery that its employees were aware of by virtue of their superior learning, skill, expertise, and experience with the medical procedure and Dr. Hood. While a hospital may have the duty to inform a patient about *what* procedure is going to be performed,[28] Kansas courts have not extended the duty to disclose the nature and probable consequences of a recommended medical procedure beyond the physician rendering the treatment.[29]

---

[27]*See* K.S.A. § 65-4915.

[28]*See Walters v. St. Francis Hosp. & Med. Ctr. Inc.*, 23 Kan. App. 2d 595, 601, 932 P.2d 1041, 1045 (1997).

[29]*Id.* at 1284 (citations omitted).

Therefore, Harris' claim attempting to infer a duty upon OPRMC's employees to inform patients about the risks of surgery in subparagraph (e) fails.

Also in subparagraph (e), Harris claims OPRMC's negligence in failing to inform by virtue of OPRMC's employees superior skill and knowledge with respect to Dr. Hood. For the reasons discussed above regarding subparagraph (c), we find that OPRMC had no duty to inform Harris regarding Dr. Hood's ability to practice or perform the surgery.

In addition to finding that OPRMC did not have a duty to inform Harris as just discussed, the Court also finds that absent Dr. Hood performing the surgical procedure in a negligent manner, Harris would not have a claim against OPRMC as stated in these allegations. Harris' claims are "because of" Dr. Hood's rendering of or failing to render professional services to a patient, thereby making Harris' claims against OPRMC derivative of and dependent upon her claim against Dr. Hood,[30] Therefore, as a matter of law, OPRMC and its employees had no duty to inform Harris of Dr. Hood's alleged compromised ability to practice medicine.

***Subparagraph (d), (f), and (g)***

Harris' remaining allegations against OPRMC fail for similar reasons as just discussed. Subparagraph (d) of Harris' Amended Complaint alleges that OPRMC carelessly and negligently failed to supervise Dr. Hood to ensure that his practice did not constitute a danger to Harris while she was a patient of OPRMC. Harris again argues that this claim is one of direct negligence against OPRMC and is unrelated to corporate negligence and is part of the causal chain. Harris cites *Glassman v. Costello, M.D.*[31] in support of her proposition that a hospital has the duty to supervise

---

[30]*See McVay*, 255 Kan. at 377, 874 P.2d at 645; *see also Culp*, 550 F. Supp. 2d at 1285 (citing *Bische ex rel. Donohoo v. Hosp. Dist. No. 1*, 2007 WL 92669, at *2 (Kan. App. Jan. 12, 2007)).

[31]267 Kan. 509, 986 P.2d 1050 (1999).

physicians under certain circumstances, which in this case, leads to a factual determination which is for a jury to decide.  Harris' argument, however, is unpersuasive.

*Glassman* dealt with the statutory duties of a physician to supervise a Certified Registered Nurse Anesthetist ("CRNA"), and the court found that while the physician cannot be held liable for the negligent acts of the CRNA, he may be liable for his direct negligence in failing to supervise the CRNA pursuant to his obligations as recognized in K.S.A. § 65-1158.[32]  The court reasoned that "65-1158(b) makes clear that the physician is the one in charge of directing the health care team performing the surgery or procedure, and that, accordingly, [the physician] had "some duty" of direction and that it was for the jury to decide whether he negligently breached that duty."[33]  Here, Dr. Hood was an independently Kansas licensed physician permitted to direct the care of his patients, and as such, OPRMC had no statutory duty to monitor or supervise those physicians with whom it had extended staff privileges.[34]  Accordingly, OPRMC had no duty, statutorily or otherwise, to monitor or supervise Dr. Hood, and therefore, Harris' claim fails as a matter of law.

Subparagraph (f) alleges that OPRMC was careless and negligent in failing to furnish Dr. Hood with information concerning his practice so he could have either corrected his practice, chosen to not perform the surgery, or informed Harris of the risks and dangers associated with the surgery with Dr. Hood performing the surgery.  Harris cites *Aldoroty, M.D. v. HCA Health Servs. of Kansas*,[35] for the proposition that a hospital is directly negligent if it fails to provide a physician with

---

[32]*Id.* at 523, 986 P.2d at 1060.

[33]*Id.* at 524, 986 P.2d at 1061.

[34]Harris has provided, and this Court has found, no statutory or other case law imposing a duty upon a medical care facility to monitor or otherwise supervise physicians performing patient care under staff privileges and not employees or agents of said facility.

[35]265 Kan. 666, 962 P.2d 501 (1998).

information which would have avoided a negligent result for a patient. This Court, however, is unwilling to adopt such an expansive interpretation of *Aldoroty*.

*Aldoroty* addressed a hospital's failure to provide a radiologist with previously acquired x-rays of a patient to permit a comparison with current films, which would have permitted the early-stage diagnosis of cancer. The parties agreed that the hospital had a duty to manage its health care audits so that prior films were available to radiologists for comparison. Because of the hospital's breach of that duty, an early diagnosis did not occur, and the cancer was not detected until it was incurable.

*Aldoroty* is clearly distinguishable from the instant case, and it provides little support for Harris' arguments. Here, the Court has not found, and neither party has provided, any authority imposing upon a hospital the duty to provide an independently licensed physician with information regarding his ability to practice, to direct the physicians course of treatment, or to provide a physician with information to enable that physician to inform his patients of dangers that may result from the physician himself, as compared to another physician, in performing the surgery. Although Harris claims this allegation relates to OPRMC's direct negligence, we again find it to be nothing more than an attempt to hold OPRMC vicariously liable for Dr. Hood's acts, and thus, barred by Kansas law.       Both OPRMC and Harris agree that OPRMC was a medical care facility and qualified for coverage under the Fund at the time of this incident. As a health care provider covered under the Fund, OPRMC is not subject to liability from the acts or omissions of Dr. Hood, a health care provider qualified for coverage under the Fund, during Harris' knee surgery.       As with subparagraphs (c) and (e), Harris' remaining claims against OPRMC, while cleverly drafted, are general claims of OPRMC's actions or inactions and are not of any specific acts of OPRMC's

-13-

employees during Harris' surgery that would give rise to an independent action.[36] Harris' allegations in her Amended Complaint are "because of" or "arise from" Dr. Hood's alleged negligent performance during surgery and not from any direct negligence of OPRMC.  Instead, Harris' claims relate to the corporate negligence of OPRMC, and therefore, are barred by Kansas law.  As a result, the Court grants Defendant OPRMC's Second Motion for Summary Judgment on all claims against it in Harris' Amended Complaint.

Accordingly,

**IT IS THEREFORE ORDERED** that Defendant OPRMC's Second Motion for Summary Judgment (Doc. 32) is hereby GRANTED.

**IT IS SO ORDERED.**

Dated this 20th day of May, 2009, in Wichita, Kansas.

/s Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[36]*See Bische*, 2007 WL 92669, at *2.